UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 15-33479 |
| Rabbe Farms LLP, | Chapter 11 |
| Debtor. | |
| In re: | Case No. 15-33481 |
| Rabbe Ag Enterprises, | Chapter 11 |
| Debtor. | |
| In re: | Case No. 15-33482 |
| North Country Seed LLC, | Chapter 11 |
| Debtor. | |

DECLARATION OF JOEL RABBE IN SUPPORT OF
BANKRUPTCY PETITIONS AND EARLY CASE MOTIONS

Joel Rabbe declares and says:

1. I am a general partner in Rabbe Farms, LLP ("**Rabbe Farms**"), a general partner in Rabbe Ag Enterprises ("**Rabbe Ag**") and a member in and chief manager of North Country Seed, LLC. I am over the age of 18 years and have personal knowledge of the facts herein. I am familiar with the day to day operations, business and financial affairs of the Debtors.

2. I submit this declaration (this "**Declaration**") (i) in support of the petitions of the Debtors for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), (ii) pursuant to 28 U.S.C. § 1746 in support of the Debtors' petitions and subsequently-filed requests for relief in the form of motions and applications (the "**Early Case Motions**") and

(iii) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of these chapter 11 cases. I have reviewed the Early Case Motions or have otherwise had their contents explained to me, and it is my belief that the relief sought therein is essential to the uninterrupted operation of the Debtors' businesses and to the Debtors' reorganization.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision or my opinion based upon experience, knowledge and information concerning the operations of the Debtors and farming, grain trading and seed cultivation industry as a whole. If called upon to testify, I would testify competently to the facts set forth in this Declaration. Unless otherwise indicated, the financial information contained herein is unaudited.

## COMMENCEMENT OF REORGANIZATION PROCEEDINGS

1. On September 29, 2015, (the "**Petition Date**"), Rabbe Farms, Rabbe Ag and NCS each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. Part I of this Declaration describes the Debtors' businesses; Part II describes the circumstances giving rise to the commencement of these chapter 11 cases; Part III describes the Debtors' prepetition restructuring initiatives; and Part IV sets forth the relevant facts in support of the Early Case Motions.

# I.

## THE DEBTORS' BUSINESSES

**A. Rabbe Farms, LLP**

<u>Operations</u>:

1. Rabbe Farms was originally organized as a general partnership by three partners, John J. Rabbe and his two sons, Joel S. Rabbe, and Jon E. Rabbe. Rabbe Farms elected to be treated as a limited liability partnership on December 27, 2000. Rabbe Farms LLP, when established, was the production agriculture (farming) entity that the three partners operated. Not only was Rabbe Farms LLP actively involved in production agriculture, raising corn, commodity soybeans, and value added soybeans, but it also acquired farmland. Subsequently, it acquired grain elevators to help support the farming enterprise.

2. As time went on, the three partners were advised that due to federal farm program payment limitations, a general partnership would be required, rather than a limited liability partnership. Hence Rabbe Ag was formed on January 1, 2003, to conduct the farming operations. Even after the inception of Rabbe Ag, Rabbe Farms continued to own farmland that was farmed by Rabbe Ag.

3. The land owned by Rabbe Farms produces a large portion of the soybean production raised by Rabbe Ag. Not only does the Rabbe Farms land support the overall farm production acres, but more specifically it has become positioned to raise identity-preserved, value-added soybeans which ultimately allow the farming operation to enjoy enhanced margins.

4. In 2001, Rabbe Farms acquired the Persson Grain Co. of Trimont, Minnesota. The acquisition of Perrson Grain Co. allowed the farming operation to begin direct shipments of

identity-preserved, value-added bulk soybeans and corn to customers in the Far East. Rabbe Farms adopted the assumed name "Rabbe Grain Co."

5. In addition, the farmland owned by Rabbe Farms has been groomed over years to house the nursery plots for non-GMO seed and germ plasma developed by Galena Genetics, LLC, a subsidiary of NCS. These plots range in field increments from 7.5 foot row length, to 15 foot row length, to 1 acre strips and contain new variety experiments that could only be conducted on owned land.

6. In 2003, Rabbe Farms acquired grain storage facilities from WFS Co-op. The facilities were outdated by current grain handling standards, but were most conducive to handling and staging shipment of bulk identity-preserved products. Rabbe adopted the assumed name "Rabbe Grain Elevator."

7. Approximately two years ago, Rabbe Farms became aware that its former accountant had been incorrectly booking grain transactions. To rectify the error, Rabbe Farms was required to restate its earnings which resulted in a negative adjustment in earnings of approximately $12 million. Faced with this unexpected loss, Rabbe Farms immediately took steps to cut costs and improve earnings. One of the things Rabbe Farms did was to immediately terminate its grain handling and trading business. Rabbe Farms did this by closing out all third-party grain positions and renting out the elevators to a coop.

Organizational Structure. Rabbe Farms is a partnership governed by Minn. Stat. Ch. 323A. Rabbe Farms has qualified as a limited liability partnership under Minn. Stat. § 323A.1001. The partners in Rabbe Farms are Joel Rabbe, Jon Rabbe and Joyce Rabbe, each owing one-third of the partnership interests. Rabbe Farms owns 503 acres of farmland and the property improved with grain elevators and storage bins.

Capital Structure.[1]    Rabbe Farms is the maker of two notes in favor of Farmers State Bank of Trimont ("**FSB**").  Note No. 1046-36 dated June 17, 2013 in the original principal amount of $14,950,000.00, had a balance as of June 8, 2015 of $14,950,000.00 exclusive of accruing and unpaid interest, and attorneys' fees, costs, and expenses.  Note No. 1046-28 dated March 24, 2014 in the original principal amount of $2,500,000.00, had a balance as of June 8, 2015 of $2,500,000.00 exclusive of accruing and unpaid interest, and attorneys' fees, costs, and expenses.  The obligations evidenced by Note Nos. 1046-36 and 1046-28 are referred to hereinafter as the "**Rabbe Farms FSB Debt.**"  The three partners in Rabbe Farms as well as the spouses of Joel and Jon have executed personal guarantees of the Rabbe Farms FSB Debt.  Rabbe Farms has executed a mortgage and security agreement in favor of FSB.  The guarantors have also executed a mortgage in certain farmland owned by them individually to FSB.

Rabbe Farms is also obligated to Agstar Financial Services ("**Agstar**") under three separate loans, nos. 1234576700, 1234589200 and 123959550 with aggregate approximate balances of $223,750.00 as of August 1, 2015 and to Welcome State Bank under loan no. 00-672276-50 with an approximate balance of $169,945.00 as of August 1, 2015.

**B.    Rabbe Ag Enterprises**

Operations:

Rabbe Ag was formed on January 1, 2003.  Rabbe Ag rents land from Rabbe Farms, the individual Rabbe family members, and unrelated third parties and raises corn and soybeans on the rented land.  Rabbe Ag owns farm equipment, seed and growing crops.  Rabbe Ag employs

---

[1] The following summary is qualified in its entirety by reference to the operative documents, agreements, schedules and exhibits, which shall control in the event of any inconsistency.

at the present time or will employ approximately four seasonal workers hired to help with the harvest.

Organizational Structure.   Rabbe Ag is a partnership governed by Minn. Stat. Ch. 323A.  The partners in Rabbe Ag are Joel Rabbe, Jon Rabbe and Joyce Rabbe, each owing one-third of the partnership interests.  Rabbe Ag is registered to do business as Rabbe Ag Enterprises.

Capital Structure.[2]   Rabbe Ag is the maker of a note to FSB, Note No. 1046-39 dated June 30, 2015 in the original principal amount of $500,000.00 (the "**Rabbe Farms FSB Debt**"). Rabbe Ag is also obligated to FSB John Deere Credit Co. for equipment financing in the approximate amount of $200,000 as of June 30, 2015 and to AgDirect for equipment in the approximate amount of $53,000.00.   Rabbe Ag is also indebted to one of its partners, Joyce Rabbe in the original principal amount of $200,000 and to a non-debtor affiliate, Rabbe, Inc. for Approximately $136,500.00.

**C.     North Country Seed, LLC**

Operations:

NCS is a Minnesota limited liability company organized in 2007. NCS is an international marketer of high quality food grade soybeans.  NCS employs approximately 8 people.

Organizational Structure:

NCS is a Minnesota limited liability company.  It has four members:

Joel Rabbe                      33.330%

---

[2] The following summary is qualified in its entirety by reference to the operative documents, agreements, schedules and exhibits, which shall control in the event of any inconsistency.

| | |
|---|---|
| Jon Rabbe | 33.330% |
| Joyce Rabbe | 25.000% |
| Christensen Brothers | 8.340% |

It has a wholly owned subsidiary, Galena Genetics, LLC ("**Galena**"). Galena produces non-GMO seeds for sale to grain producers. Galena owns soybeans for sale, seed stock, packaging and the germ plasma for its developing line of non-GMO seeds.

<u>Capital Structure.</u>[3] NCS is obligated to FSB under a line of credit with an approximate balance of $1.4 million. NCS is also obligated to its member Joyce Rabbe for a loan in the amount of $400,000 and to Rabbe Farms in the approximate amount of $3.38 million. NCS is also obligated to FCA Co-op in the approximate amount of $2.9 million.

## II.

## EVENTS LEADING TO THE CHAPTER 11 CASES

1.  The Rabbe businesses had enjoyed steady growth over the years fueled in part by rising prices for corn and soybeans and the resulting increases in farmland. In the last two years however, corn and soybean prices have dropped and as a result so has the farmland they are grown on. Moreover, approximately two years ago Rabbe management became aware that their former accountant had been incorrectly booking grain transactions for Rabbe Grain Co. (an assumed name of Rabbe Farms). The result was a negative adjustment in earnings of Rabbe Farms of approximately $12 million. Rabbe Farms immediately took steps to cut costs and improve earnings. One of the things Rabbe Farms did was to terminate its grain handling

---

[3] The following summary is qualified in its entirety by reference to the operative documents, agreements, schedules and exhibits, which shall control in the event of any inconsistency.

and trading business.  Rabbe Farms did this by closing out (paying) all third-party grain positions and renting out the elevators to a coop.

2.  The adjustment triggered a coverage covenant default in Rabbe Farms loan documents with FSB.  FSB declared a default and Rabbe Farms entered into negotiations with FSB for a forbearance agreement in order to pursue a mutually agreeable solution.

### III.

### PREPETITION RESTRUCTURING INITIATIVES

The Debtors' management team has taken various prepetition actions in response to the challenges described above.  When the accounting errors were discovered, the Debtors retained new accountants, the Mankato CPA firm of Abdo, Eick & Meyer to restate the financial statements.  The Debtors retained the Minneapolis law firm of Stinson Leonard Street to advise them of their legal rights and to assist in the negotiation of the forbearance agreements.  The Debtors hired an experienced turnaround consultant, Michael Fox of Matrix Associates.  In August 2015, the Debtor retained experience bankruptcy counsel in Lapp, Libra, Thomson, Stoebner & Pusch Chartered.  All of these professionals have worked to reach a resolution outside a bankruptcy without success.  The Debtors obtained updated title work and equipment valuations.

### IV.

### EARLY CASE MOTIONS

1.  The Debtors filed the Early Case Motions shortly after the filing of their chapter 11 petitions.  The Debtors request that each of the Early Case Motions be granted, as each constitutes a critical element in achieving a successful and smooth transition into chapter 11.

2.      For a more detailed description of the Early Case Motions than set forth below, the Debtors respectfully refer the Court to the respective Early Case Motions. To the extent that this Declaration and the provisions of any of the Early Case Motions are inconsistent, the terms of the Early Case Motions shall control. Capitalized terms that are used in this Part IV but not otherwise defined herein shall have the meanings ascribed to them in the relevant Early Case Motion.

### A. Joint Administration Motion

1.      The Debtors seek entry of an order directing joint administration of these cases for procedural purposes only, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Local Rules of the United States Bankruptcy Court for the District of Minnesota (the "**Local Rules**"). Specifically, the Debtors request that the Court maintain one file and one docket for all of the chapter 11 cases under the lead case, Rabbe Farms, LLP. Further, the Debtors request that an entry be made on the docket of each of the chapter 11 cases of the Debtors to indicate the joint administration of the estates.

2.      Given the provisions of the Bankruptcy Code and the Debtors' affiliation, joint administration of these cases is warranted. Joint administration will avoid the preparation, replication, service and filing, as applicable, of duplicative notices, applications and orders, thereby saving the Debtors considerable expense and resources. The Debtors' financial affairs and business operations are closely related. Many of the motions, hearings and orders in these chapter 11 cases will affect each Debtor and their respective estates. The rights of creditors will not be adversely affected, as this Motion requests only administrative, and not substantive, consolidation of the estates. Moreover, each creditor can still file its claim against a particular estate. In fact, all creditors will benefit by the reduced costs that will result from the joint

administration of these chapter 11 cases. The Court also will be relieved of the burden of entering duplicative orders and maintaining duplicative files. Finally, supervision of the administrative aspects of these chapter 11 cases by the U.S. Trustee for the District of Minnesota will be simplified.

3. I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates and their creditors and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Joint Administration Motion should be granted.

B. **Cash Collateral Motion**

1. The Debtors seek an order authorizing use of cash collateral of any entity claiming an interest in cash collateral on an interim and final basis. The Debtors seek interim use for the items listed in the Cash Collateral Motion. The Debtors have carefully reviewed their cash needs and believe that payment of the amounts and to the entities identified in the Cash Collateral Motion is necessary to avoid irreparable harm to the Debtors.

2. The Debtors also seek final use of cash collateral through December 31, 2015 for the items and in the amounts provided in the Debtors' 13 week projections.

3. I believe that the relief requested in the Cash Collateral Motion is in the best interests of the Debtors' estates and their creditors and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Cash Collateral Motion should be granted.

C. **Payroll Motion**

1. The Debtors seek entry of interim and final orders (a) authorizing, but not

requiring, them to pay or cause to be paid, in their sole discretion, all or a portion of the amounts owing (and associated costs) under or related to wages, the withholding obligations and other items described in the Payroll Motion; (b) authorizing, but not requiring, them to continue their plans, practices, programs and policies for their current and former employees, as applicable, as those employee programs were in effect as of the Petition Date and as may be modified, terminated, amended or supplemented from time to time, in their sole discretion, and to make payments pursuant to the employee programs in the ordinary course of business, as well as to pay related administrative obligations, and (c) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks drawn on the Debtors' payroll and general disbursement accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing.

2.     The Debtors employ seasonal workers at this time of the year to help with the harvest. These employees are paid weekly and if the requested relief is not granted, the employees will likely leave as the work is seasonal and only available for a very short time. The Debtors simply cannot risk a successful and timely harvest by not paying the seasonal employees. It is also urgent that the Debtors pay their regular employees and failure to pay them will result in substantial damage to their businesses that would inevitably attend any decline in the employees' morale attributable to the Debtors' failure to pay wages, salaries, benefits and other similar items.

3.     I believe that the relief requested in the Payroll Motion is in the best interests of the Debtors' estates and their creditors and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition into chapter 11. Accordingly, on behalf of the Debtors, I respectfully submit that the Payroll Motion should be granted.

11

I declare under penalty of perjury that the facts contained in the foregoing declaration are true and correct to the best of my knowledge, information and belief.

Dated: October 2, 2015

_____
Joel Rabbe

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No: 15-33479 |
| Rabbe Farms, LLP, | CHAPTER 11 CASE |
| Debtor. | |

| | |
|---|---|
| In re: | Bankruptcy Case No: 15-33481 |
| Rabbe Ag Enterprises, | CHAPTER 11 CASE |
| Debtor. | |

| | |
|---|---|
| In re: | Bankruptcy Case No: 15-33482 |
| North Country Seed LLC, | CHAPTER 11 CASE |
| Debtor. | |

**CERTIFICATE OF SERVICE**

     Christy R. Urick, under penalty of perjury, states that on October 5, 2015, she caused to be filed electronically with the Clerk of Court and served through ECF (which constitutes service or notice pursuant to Local Rule 9006-1(a)), by email, or by overnight delivery (via FedEx or U.S. Mail) the following documents :

**Declaration of Joel Rabbe in Support of Bankruptcy Petitions and Early Case Motions**

to the parties on the attached list.

Dated: October 5, 2015                                                    */e/ Christy Urick*
                                                                                                     Christy Urick

# RABBE FARMS, LLP
# RABBE AG ENTERPRISES
# NORTH COUNTRY SEED LLC
# FIRST DAY DOCUMENTS SERVICE LIST

*Served via FedEx or U.S. Mail overnight delivery. Those parties whose contact information includes an email address were also served via email address listed.*

**US TRUSTEE AND OTHER REQUIRED PARTIES**

UNITED STATES TRUSTEE
U.S. TRUSTEE'S OFFICE
1015 US COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415
USTPREGION12.MN.ECF@USDOJ.GOV

MICHAEL FADLOVICH
U.S. TRUSTEE'S OFFICE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415
MICHAEL.FADLOVICH@USDOJ.GOV

IRS DISTRICT COUNCIL
380 JACKSON STREET, STE 650
ST. PAUL, MN 55101-4804

INTERNAL REVENUE SERVICE
WELLS FARGO PLACE
30 E 7TH STREET
MAIL STOP 5700
ST. PAUL, MN 55101

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS UNIT
PO BOX 7346
PHILADELPHIA, PA 19101

MN DEPARTMENT OF REVENUE
551 BKY SECTION
PO BOX 64447
SAINT PAUL, MN 55164

OFFICE OF THE U.S. ATTORNEY
600 US COURTHOUSE
300 S. FOURTH STREET
MINNEAPOLIS, MN 55415

**DEBTORS**
RABBE FARMS, LLP
501 MAIN STREET
ORMSBY, MN 56162

RABBE AG ENTERPRISES
PO BOX 548
ORMSBY, MN 56162

NORTH COUNTRY SEED LLC
PO BOX 548
ORMSBY, MN 56162

**INTERESTED PARTIES**

ABDO EICK & MEYERS, LLP
P.O. BOX 3166
MANKATO, MN 56002-3166

AGSTAR FINANCIAL SERVICES
1921 PREMIER DRIVE
MANKATO, MN 56001

CHS INSURANCE SERVICES, LLC
P.O. BOX 64422
ST. PAUL, MN 55164

CITY OF ORMSBY
P.O. BOX 507
ORMSBY, MN 56162

FARMERS STATE BANK OF TRIMONT
220 WEST MAIN STREET
TRIMONT, MN 56176

FEDERATED RURAL ELECTRIC
P.O. BOX 69
JACKSON, MN 56143

FRONTIER
P.O. BOX 20550
ROCHESTER, NY 14602-0550

KENNETH AMMAN
769 250TH STREET
ORMSBY, MN 56162

KUEHL'S ELECTRIC INC.
304 TIELL DRIVE
SAINT JAMES, MN 56081

MASSOP ELECTRIC, INC.
1409 SILVER STREET EAST
MAPLETON, MN 55164

PLUNKETT'S PEST CONTROL
40 NE 52ND WAY
MINNEAPOLIS, MN 55421

RABBE AG ENTERPRISES
2247 90TH AVENUE
TRIMONT, MN 56176

STEP, INC.
PO BOX 110
FAIRMONT, MN 56031

WELCOME STATE BANK
111 GUIDE STREET NORTH
WELCOME, MN 56181

AGDIRECT
5015 SOUTH 118TH STREET
OMAHA, NE 68137

JD FINANCIAL
PO BOX 4450
CAROL STREAM, IL 60197

JOEL RABBE
PO BOX 330
TRIMONT, MN 56176

JOHN DEERE CREDIT CORP
PO BOX 650215
DALLAS, TX 75265

JON E. RABBE
2247 90TH STREET
TRIMONT, MN 56176

JOYCE RABBE
PO BOX 261
TRIMONT, MN 56176

JOYCE RABBE & TRUST
PO BOX 261
TRIMONT, MN 56176

RABBE, INC.
PO BOX 548
ORMSBY, MN 56162

SOUTH CENTRAL ELECTRIC
71176 TIELL DRIVE
PO BOX 150
SAINT JAMES, MN 56081

BEN AND PETE CHRISTENSON
75950 300TH STREET
SAINT JAMES, MN 56081

DAVE SNYDER
3868 150TH STREET
ESTHERVILLE, IA 51334

DENNIS HYLEN
49729 STATE HWY 60
LAKE CRYSTAL, MN 56055

FCA COOP
PO BOX 228
JACKSON, MN 56143

GLENN HENRICKSEN
PO BOX 138
ARMSTRONG, IA 50514

GREG KNIGHT
3070 HWY 71
SPENCER, IA 51301

HERMAN ANDERSON
26610 STATE HWY 15
MADELIA, MN 56062

JEFF HOHENSTEIN
51195 158TH STREET
GARDEN CITY, MN 56034

JOEL OBERDIECK
42699 850TH AVENUE
TRUMAN, MN 56088

KEN ANACKER
57915 310TH STREET
MOUNTAIN LAKE, MN 56159

LAUREN STEINLE
33919 640TH AVENUE
BUTTERFIELD, MN 56120

MERLE GIESEKE
2230 150TH STREET
FAIRMONT, MN 56031

MIKE MAUER
50921 213TH STREET
LAKE CRYSTAL, MN 56055

NEAL MENSING
14136 365TH AVENUE
BLUE EARTH, MN 56013

PRO COOPERATIVE
17 3RD AVENUE NE
POCAHONTAS, IA 50574

SANFORD SEIBERT
35252 STATE HWY 15
LEWISVILLE, MN 56060

SOUTH CENTRAL COOP
64842 460TH STREET
FAIRFAX, MN 55332

SOUTH CENTRAL ELECTRIC
ASSOCIATION
PO BOX 150
SAINT JAMES, MN 56081

TODD THILGES
105 140TH STREET
WEST BEND, IA 50597

WENDEL RODE
1311 105TH STREET
WELCOME, MN 56181

MARILYN OLSON
927 CANNON VALLEY DRIVE W
NORTHFIELD, MN 55057